UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

PAMELA P.,

                Plaintiff,

    v.                                        3:19-CV-575

                                                   (DJS)

ANDREW M. SAUL, *Commissioner of
Social Security*,

                Defendant.

_____

**APPEARANCES:**                                         **OF COUNSEL:**

LACHMAN & GORTON                        PETER A. GORTON, ESQ.
Attorney for Plaintiff
P.O. Box 89
1500 East Main Street
Endicott, New York 13761-0089

U.S. SOCIAL SECURITY ADMIN.         HUGH DUN RAPPAPORT, ESQ.
OFFICE OF REG'L GEN. COUNSEL
Attorney for Defendant
J.F.K. Federal Building - Room 625
Boston, MA 02203

**DANIEL J. STEWART**
**United States Magistrate Judge**

### MEMORANDUM-DECISION AND ORDER[1]

      Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) seeking review of a decision by the Commissioner of Social Security that Plaintiff was not disabled for

---

[1] Upon Plaintiff's consent, the United States' general consent, and in accordance with this District's General Order 18, this matter has been referred to the undersigned to exercise full jurisdiction pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. *See* Dkt. No. 9 & General Order 18.

purposes of supplemental security benefits. Dkt. No. 1. Currently before the Court are Plaintiff's Motion for Judgment on the Pleadings and Defendant's Motion for Judgment on the Pleadings. Dkt. Nos. 12 & 18.[2] For the reasons set forth below, Plaintiff's Motion for Judgment on the Pleadings is granted and Defendant's Motion is denied. The Commissioner's decision is remanded for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

## I. RELEVANT BACKGROUND

### A. Factual Background

Plaintiff was born in 1994. Dkt. No. 11, Admin. Tr. ("Tr."), p. 237. Plaintiff reported having completed one year of college. Tr. at p. 243. She has no past work experience. Tr. at p. 242. Plaintiff alleges disability based upon a learning disability, whole back pain, carpel tunnel in both hands, dyslexia, anxiety, and depression. *Id.*

### B. Procedural History

Plaintiff applied for supplemental security income benefits on March 12, 2018. Tr. at pp. 107 & 215-220. She alleged a disability onset date of January 7, 2002. Tr. at p. 108. Plaintiff's application was initially denied on May 17, 2018, after which she timely requested a hearing before an Administrative Law Judge ("ALJ"). Tr. at pp. 107-128 & 130. Plaintiff appeared at a hearing before ALJ David Romeo on December 21, 2018 at which she and a vocational expert testified. Tr. at pp. 51-84. On January 3,

---

[2] Plaintiff also filed a Reply Memorandum of Law. Dkt. No. 21.

2019, the ALJ issued a written decision finding Plaintiff was not disabled under the Social Security Act. Tr. at pp. 12-22. On March 20, 2019, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. Tr. at pp. 1-5.

### C. The ALJ's Decision

In his decision, the ALJ made the following findings of fact and conclusions of law. First, the ALJ found that Plaintiff had not engaged in substantial gainful activity since March 12, 2018, the date of her application. Tr. at p. 14. Second, the ALJ found that Plaintiff had the following severe impairments: musculoskeletal pain in the neck and midback, chronic bilateral low back pain without sciatica, bilateral carpal tunnel syndrome, major depressive disorder, borderline personality disorder, social anxiety disorder, panic disorder, posttraumatic stress disorder, and a history of substance abuse. *Id.* Third, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. § 404, Subpart P, App. 1 (the "Listings"). *Id.* Fourth, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform light work except:

> she can perform occasional kneeling and stooping. She can frequently use both upper extremities. She can understand, remember, and carry out simple instructions and make simple work-related decisions. She can tolerate occasional interaction with coworkers and supervisors and no interaction with the public. She can tolerate occasional changes in the work setting. She can tolerate a low level of work pressure, defined as work not requiring multitasking, highly detailed job tasks, significant independent judgment, very short deadline, or teamwork in completing job tasks.

Tr. at p. 16. Fifth, the ALJ found that Plaintiff had no past relevant work. Tr. at p. 20. Sixth, the ALJ found that Plaintiff was in the "younger individual age" category, had at least a high school education, and is able to communicate in English. *Id.* Seventh, the ALJ found that there was work existing in significant numbers in the national economy that Plaintiff could perform. Tr. at pp. 20-21. The ALJ, therefore, concluded that Plaintiff is not disabled. Tr. at p. 21.

### D. The Parties' Positions

Plaintiff makes three arguments in support of reversal. First, she argues that the ALJ's determination regarding Plaintiff's mental residual functional capacity was not supported by substantial evidence. Dkt. No. 12, Pl.'s Mem. of Law at pp. 9-15. Second, Plaintiff argues that the ALJ failed to properly evaluate certain medical opinions in the record. *Id.* at pp. 15-24. Finally, Plaintiff contends that in light of the erroneous determination regarding Plaintiff's residual functional capacity, the Step Five determination regarding Plaintiff's ability to work was not supported by substantial evidence. *Id.* at p. 24. Defendant counters that the ALJ properly evaluated the opinion evidence in the record and that his determination is supported by substantial evidence. *See generally* Dkt. No. 18, Def.'s Mem. of Law.

## II. RELEVANT LEGAL STANDARDS

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. 42 U.S.C. § 405(g); *Wagner v. Sec'y of Health &*

*Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence.  *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *accord Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983), *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).  "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).  If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]."

5

*Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B. Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *accord McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thompson,* 540 U.S. 20, 24 (2003).

### III. ANALYSIS

As the ALJ recognized, Plaintiff suffers from several mental impairments. Tr. at p. 14 (identifying major depressive disorder, borderline personality disorder, social anxiety disorder, panic disorder, and posttraumatic stress disorder as severe impairments). Plaintiff argues that in assessing the record, the ALJ improperly assessed the medical opinions regarding these impairments and, as a result, improperly assessed Plaintiff's mental RFC. Pl.'s Mem. of Law at pp. 9-24. Defendant is correct that the appropriateness of the mental RFC and the evaluation of the medical opinions are closely related and can be considered together in this case. *See* Def.'s Mem. of Law at p. 4 n. 2.

Having been filed in 2018, this case is controlled by new Social Security Administration regulations regarding the evaluation of those medical opinions. 20 C.F.R. § 416.920c. Perhaps most significant under these new regulations, the opinions of treating medical providers are no longer entitled to presumptively controlling weight. *See Gustafson v. Berryhill*, 2019 WL 4744822, at *2 n. 1 (D. Conn. Sept. 30, 2019). The regulations, however, continue to require Defendant to consider many of the same

factors previously addressed under the treating physician rule including the supportability and consistency of an opinion with other evidence, the relationship of the medical provider with the patient, and the extent, if any, of a doctor's specialization. *Compare* 20 C.F.R. § 416.920c(a) & (c) *with Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (outlining factors relevant under treating physician rule). Plaintiff's main brief applies the old rule, but concedes in her reply that the proper analysis is under section 416.920c. *See* Dkt. Nos. 12 & 21.

In all cases the ALJ is required to provide rationale in the written decision sufficient to allow a reviewing court to conduct an adequate review of his findings. *Hamedallah ex rel. E.B. v. Astrue*, 876 F. Supp. 2d 133, 142 (N.D.N.Y. 2012) ("A court 'cannot . . . conduct a review that is both limited and meaningful if the ALJ does not state with sufficient clarity the legal rules being applied and the weight accorded the evidence considered.'") (quoting *Morgan on behalf of Morgan v. Chater*, 913 F. Supp. 184, 188-89 (W.D.N.Y. 1996)); *Booker v. Astrue*, 2011 WL 3735808, at *5 (N.D.N.Y. Aug 24, 2011) ("The crucial factors in an ALJ's decision must be set forth in sufficient detail as to enable meaningful review by the court.") (citing *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984)). "The ALJ must 'build an accurate and logical bridge from the evidence to [his] conclusion to enable a meaningful review.'" *Hickman ex rel. M.A.H. v. Astrue*, 728 F. Supp. 2d 168, 173 (N.D.N.Y. 2010) (quoting *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002)). Here, remand is warranted because the ALJ's findings do not permit that meaningful review.

With respect to Plaintiff's mental residual capacity, the ALJ's decision discusses three opinions: the consultative examination of Amanda Slowik, the opinion of L. Haus, the State agency medical consultant, and the opinion of Dr. Sae Joun Park, Plaintiff's treating doctor.  *See* Tr. at pp. 19-20.

Slowik's opinion found Plaintiff's ability to sustain concentration is "moderately limited."  Tr. at p. 565.  She further found Plaintiff's ability to apply complex directions and interact appropriately with supervisors, coworkers, and the general public "moderately to markedly limited."  *Id.*  Finally, amid other findings, Slowik found that Plaintiff's "ability to sustain an ordinary routine and regulate emotions is markedly limited."  *Id.*  Dr. Park's mental functional opinion identified "extreme" limitations in Plaintiff's abilities regarding concentration, persistence, interaction with others, and stress.  Tr. at pp. 623-24.  Haus found that Plaintiff "retains the capacity to perform unskilled work with only occasional contact with others and the public."  Tr. at p. 109.

In addressing these opinions, the ALJ found the Slowik opinion "somewhat persuasive," but found it to be "an overstatement of the [Plaintiff's] mental functioning in the context of the objective medical evidence of record."  Tr. at p. 19.  The ALJ found Haus' opinion "persuasive" in part because "it is consistent with the objective medical evidence of record."  *Id.*  He found Dr. Park's opinion not persuasive "as the record does not contain objective evidence to support the extensive limitations opined and because they are inconsistent with the claimant's daily activity level."  Tr. at p. 20.

The Court recognizes that "it is specifically the province of the ALJ to choose between properly submitted medical opinions." *Jennifer Lee W. v. Berryhill*, 2019 WL 1243759, at *6 (N.D.N.Y. Mar. 18, 2019) (internal alterations omitted). Additionally, "[i]t is the province of the ALJ to resolve genuine conflicts in the record." *Clemons v. Comm'r of Soc. Sec.*, 2017 WL 766901, at *4 (N.D.N.Y. Feb. 27, 2017) (citing *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002)). In doing so, however, "the ALJ must construct an accurate and logical bridge between the information in the record and the conclusion that the claimant is not disabled." *Meyer v. Berryhill*, 2019 WL 3457219, at *4 (W.D.N.Y. July 31, 2019). Only when the ALJ does so is the Court in a position to "to conduct meaningful review" as to whether "the ALJ's analysis and resulting RFC are supported by substantial evidence." *Muldowney v. Comm'r of Soc. Sec.*, 2018 WL 2417837, at *8 (N.D.N.Y. May 29, 2018) (citing cases). The decision under review does not meet these standards.

First, in discounting the opinions from Slowik and Park the ALJ relied heavily on his view that their opinions were inconsistent with the objective medical evidence. Tr. at pp. 19-20. A careful review of the record reveals that the ALJ's opinion itself cherry picks from the record to place Plaintiff's overall mental functioning in the best possible light. Cherry picking "refers to improperly crediting evidence that supports findings while ignoring conflicting evidence from the same source." *Dowling v. Comm'r of Soc. Sec.*, 2015 WL 5512408, at *11 (N.D.N.Y. Sept. 15, 2015). For example, the ALJ states that in July and August 2018 Plaintiff displayed no suicidal or

10

homicidal ideation. Tr. at p. 18 (citing Tr. at pp. 604 & 607). The progress note for July 2, 2018, however, states both that Plaintiff "has homicidal ideation" and that there is "[n]o suicidal or homicidal ideation present at this time." Tr. at p. 604. The ALJ neither recognizes this inconsistency nor articulates a basis for relying on one of two inconsistent findings from this record. The progress note for August 16, 2018, while stating there was no suicidal or homicidal ideation present nonetheless discusses how Plaintiff was having thoughts of harming her own mother. Tr. at p. 607. So in each case, the ALJ clearly chose to focus on only one part of a conflicting medical record.

The ALJ also cited as evidence of a successful treatment regime that Plaintiff reported "feeling much better and more stable on Latuda." Tr. at p. 18 (citing Tr. at p. 421). This reference to the record, however, is incomplete because while Plaintiff made this comment, she reported that she "*was* feeling much better and more stable on Latuda," and also reported that she could not get her insurer to pay for it and it was not at the time listed as one of the medications she was taking. Tr. at pp. 421 & 423. When, in fact, she was taking this medication is actually somewhat unclear in the record at other times as well. *Compare* Tr. at p. 562 *with* Tr. at p. 568 (citations to consultative exam reports from the same date where one lists Latuda as a current medication, and the other does not).

These findings lay in stark contrast to other evidence in the record suggesting Plaintiff's difficulty in addressing her mental health issues. Among the relevant evidence supportive of Plaintiff's claims are her frequent subjective complaints of

11

difficulties, the increasing of her medication dosage, and recommendations of increased therapy treatments, Tr. at pp. 600-607, findings of poor insight and judgment, Tr. at p. 304, and frequent confrontations with others. Tr. at pp. 531-33 & 538. These all bear directly on the RFC findings made by the ALJ, specifically in regard to Plaintiff's ability to deal with others and make decisions in the workplace. *See* Tr. at p. 16. Defendant suggests that some of the examples cited by Plaintiff overstate her actual condition or are too old to be relevant to an assessment of Plaintiff's current functioning. *See, e.g.*, Def.'s Mem. of Law at pp. 11 & 19-20. The Court does not resolve this dispute here, but notes simply that the ALJ's analysis did not discuss at any length the evidence more favorable to Plaintiff's position.

Because some aspects of the ALJ's conclusion that Plaintiff is not disabled "are improperly based on a selective citation to, and mischaracterization of, the record, the Court finds that the ALJ's decision does not provide an adequate basis for meaningful judicial review, and is not supported by substantial evidence." *Poles v. Colvin*, 2015 WL 6024400, at *4 (W.D.N.Y. Oct. 15, 2015); *see also Strange v. Comm'r of Soc. Sec.*, 2014 WL 4637093, at *9 (N.D.N.Y. Sept. 16, 2014) ("'Cherry picked' decisions do not satisfy substantial evidence standards because reviewing courts cannot conclude, under such circumstances, that adverse findings were based on evidence reasonable minds might accept as adequate to support a conclusion.").

Beyond these concerns about cherry picking, remand is also warranted given the conclusory nature of the ALJ's reasoning here. 20 C.F.R. § 416.920c identifies

supportability and consistency as "the most important factors we consider when we determine how persuasive we find a medical source's medical opinions." 20 C.F.R. § 416.920c(b)(2).  As a result the regulations specifically require Defendant to "explain how we considered the supportability and consistency factors for a medical source's medical opinions."  *Id.*  This is consistent with an ALJ's longstanding duty to fully explain exactly how a particular medical opinion or opinions are inconsistent with the medical evidence.  *Wright v. Comm'r of Soc. Sec.*, 2020 WL 1323013, at *2 (E.D.N.Y. Mar. 20, 2020).  "Eschewing rote analysis and conclusory explanations, the ALJ must discuss the 'the crucial factors in any determination . . . with sufficient specificity to enable the reviewing court to decide whether the determination is supported by substantial evidence.'"  *Puckett v. Berryhill*, 2018 WL 6625095, at *9 (S.D.N.Y. July 13, 2018) (quoting *Calzada v. Astrue*, 753 F. Supp. 2d 250, 269 (S.D.N.Y. 2010)).  The record here does not provide sufficient explanation.

In partially rejecting Slowik's opinion, the ALJ offered only that her stated limitations were an "overstatement of the claimant's mental functioning" with no effort to quantify or explain in what way this was true.  Tr. at p. 19.  The ALJ's discussion of the opinion of Dr. Park, Plaintiff's treating physician, is also conclusory.  Tr. at pp. 19-20.  While it is entirely permissible to rely more heavily on certain aspects of a medical opinion over others "an administrative law judge must have a sound reason for weighting portions of the same-source opinions differently."  *Dowling v. Comm'r of Soc. Sec.*, 2015 WL 5512408, at *11 (N.D.N.Y. Sept. 15, 2015).  Here, the ALJ's

decision fails to offer an appropriate explanation of how Dr. Slowik's opinion could be persuasive while at the same time failing to explain how it overstated Plaintiff's limitations and in what way those overstatements called into question the persuasiveness of the opinion. In doing so "without offering explanation or pointing to other medical evidence" the ALJ appears to have improperly substituted his views for those of a medical source. *Wojcik v. Comm'r of Soc. Sec.*, 2019 WL 101248, at *5 (W.D.N.Y. Jan. 4, 2019); *Garcia v. Barnhart*, 2003 WL 68040, at *7 (S.D.N.Y. Jan. 7, 2003).

The difficulty in the ALJ's approach is highlighted when Plaintiff's ability to maintain attention and concentration and maintain a routine in the workplace is considered. Haus' opinion found Plaintiff to be "mildly to moderately impaired" as to her ability to maintain attention and concentration. Tr. at p. 120. Slowik's medical assessment was that Plaintiff's ability in this regard was "moderately impaired," as was her ability to "sustain an ordinary routine." Tr. at p. 564. Dr. Park found Plaintiff to have an "extreme" limitation as to both her ability to maintain attention and concentration and perform activities on a schedule. Tr. at p. 623. Dr. Park specifically opined that Plaintiff would be off task 33% of the day and could be expected to miss 3 or more days of work per month. Tr. at p. 624. The vocational expert testified that a typical employer's tolerance for being off task during the workday was no more than 10 % and no more than one unexpected absence per month. Tr. at p. 81.

All of the opinions, therefore, recognize that Plaintiff has some degree of limitation in her ability to attend and concentrate on the job, though those opinions range

from some degree of moderate limitation to an extreme limitation. "[M]oderate inevitably contemplates some diminishment in capacity for work." *Reynolds v. Colvin*, 2014 WL 4184729, at *5 (N.D.N.Y. Aug. 21, 2014). The Court agrees with Plaintiff that given the medical opinions all of which identify at least mild to moderate, if not more significant, limitations in attention, concentration, and the ability to maintain a routine, together with the VE's testimony about employer expectations that "it was incumbent on ALJ [Romeo] to articulate a plausible reason or explanation as to why [Plaintiff's] moderate mental limitations do not rise to" a level such that she was unemployable or that greater restrictions were needed in the RFC. *Id.* Defendant's attempt to distinguish *Reynolds* misses the mark. Def.'s Mem. of Law at pp. 14-15. The Court does not suggest that under *Reynolds* a moderate limitation would by itself make Plaintiff unemployable, only that the ALJ did not sufficiently explain why Plaintiff was able to work despite such limitations. The ultimate question of whether Plaintiff is disabled thus remains open on remand. *Reynolds v. Colvin*, 2014 WL 4184729, at *5 (remanding simply for "clarification" of the ALJ's rationale).

Finally, the ALJ also appears to have placed considerable weight on his view that the restrictive opinions of Plaintiff's mental status were inconsistent with her daily activities. The Court disagrees that on this record that was a significant basis on which to discount these opinions. The daily activities identified by the ALJ included Plaintiff's ability to dress, bathe, and groom herself, prepare meals, grocery shop, provide childcare, and do laundry. Tr. at p. 18. There is no apparent connection between these

15

physical activities and Plaintiff's mental functional abilities. *Rodriguez v. Berryhill*, 2017 WL 5133342, at *4 (W.D.N.Y. Nov. 6, 2017) (plaintiff's ability to perform physical self-care tasks "has no bearing on the mental portion of the RFC assessment that is at issue here"). In fact, to the extent these activities do touch on Plaintiff's mental functional ability, they may well suggest the opposite conclusion. They suggest, for example, that Plaintiff is able to go out in public only with her father and that she needs basic assistance with money management. Tr. at p. 18. The ALJ's analysis in this regard is particularly problematic given that courts have consistently warned against placing the level of emphasis on daily activities that the ALJ appears to have done here. *See, e.g.*, *Craig R. v. Berryhill*, 2019 WL 4415531, at *4 (N.D.N.Y. Sept. 16, 2019) (citing cases); *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998) (a claimant "need not be an invalid" to be disabled under the Social Security Act); *McGregor v. Astrue*, 993 F.Supp.2d 130, 142 (N.D.N.Y. 2012) ("it is well-settled that the ability to perform basic activities of self-care activities 'do not by themselves contradict allegations of disability.'").

"It is ultimately the ALJ's obligation to weigh the evidence and resolve conflicts in it, but in doing so the ALJ must provide 'a more comprehensive explanation than the one given here.'" *Andrew L. v. Berryhill*, 2019 WL 1081460, at *5 (N.D.N.Y. Mar. 7, 2019) (quoting *Marrese v. Colvin*, 2016 WL 5081481, at *3 (W.D.N.Y. Sept. 16, 2016)). The matter is, therefore, remanded for further consideration.

## IV. CONCLUSION

**ACCORDINGLY**, it is

**ORDERED**, that Plaintiff's Motion for Judgment on the Pleadings (Dkt. No. 12) is **GRANTED**; and it is further

**ORDERED**, that Defendant's Motion for Judgment on the Pleadings (Dkt. No. 18) is **DENIED**; and it is further

**ORDERED,** that the decision of the Commissioner is **REVERSED** and this case **REMANDED**, pursuant to sentence four of 42 U.S.C. § 405(g), for a proper evaluation of the medical opinions and Plaintiff's RFC, and other further proceedings, consistent with this Decision; and it is further

**ORDERED,** that the Clerk of the Court shall serve copies of this Memorandum-Decision and Order on the parties.

Dated: May 20, 2020
     Albany, New York

Daniel J. Stewart
U.S. Magistrate Judge